IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.**

JOHN MAGER, Plaintiff

v.

EL PASO COUNTY, a municipality;
SHERIFF JOSEPH ROYBAL, in his official capacity;
BRETT FALGOUST, in his  individual personal capacity;
SUSAN ARAGON,  in her individual personal capacity:
Defendants

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, **JOHN MAGER**, by and through his undersigned counsel, for his complaint states as follows:

### INTRODUCTION

1.      This is an action for damages that arises out of the unconstitutional conduct of El Paso County Deputies Brett Falgoust and Susan Aragon on January 21, 2024.  On January 21, 2024, John Mager suffered a near death medical emergency due to the outrageous and unlawful conduct of El Paso County Deputies Brett Falgoust and Susan Aragon.

2.      A neighbor dispute had occurred between Mr. Mager, his wife Carole, and Wendi Trehern.  Ms. Trehern had given the Magers lumber and garden supplies that at the time she did not need.  On the day in question, Ms. Trehern drove to the Mager's home and retrieved the

lumber.  Believing Ms. Trehern wanted all the property back, Mr. Mager loaded his truck and delivered the rest of Ms. Trehern's property to her driveway.  Ms. Trehern was unhappy with the manner Mr. Mager left the property and called the El Paso County Sheriff.

3.      Deputies Falgoust and Aragon responded to the scene and spoke with Ms. Trehern.  All interactions between the deputies and witnesses were documented on body worn camera (BWC).  After speaking with Ms. Trehern and observing the property in her driveway, both Deputies agreed no criminal violation had occurred and at most it was a civil infraction for littering.  Deputies Falgoust and Aragon then went to Mr. Mager's residence.  Upon being contacted by Deputy Falgoust, Mr. Mager informed him he suffered from PTSD and severe anxiety.  Mr. Mager also stated he was on disability due to these conditions.  Despite being aware that no criminal violation had occurred, Deputy Falgoust forcefully seized and handcuffed Mr. Mager and placed him in a Sheriff's vehicle.  The stress of the situation caused a dramatic and potentially deadly spike in Mr. Mager's blood pressure.  Paramedics responded to the scene and eventually transported Mr. Mager to Memorial Hospital where he remained for three days.  Deputy Aragon was present for the entire action and participated in the illegal seizure.

4.      Defendants Brett Falgoust and Susan Aragon intentionally, knowingly, recklessly, and with deliberate indifference to Plaintiff's constitutional rights, unlawfully seized, battered and arrested Mr. Mager.

5.      Defendants' conduct was performed under color of state law and directly or proximately caused the deprivation of Plaintiff's federally protected rights.  Defendants El Paso County and Sheriff Joseph Royball have a continuing, persistent, and widespread practice of unconstitutional misconduct by its Deputies engaging in unlawful arrests and excessive force.  Defendants El Paso County and Sheriff Joseph Royball exhibited deliberate indifference to or

tacit approval of its Deputies' misconduct, which is El Paso County's official custom, policy, or practice. That custom, policy, or practice was the moving force behind Defendants' unconstitutional acts.

## JURISICTION AND VENUE

6. Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), and this case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiffs' claims for attorney fees is conferred by and brought pursuant to 42 U.S.C. § 1988.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State of Colorado at all relevant times stated herein.

## PARTIES

8. At all times relevant to this Complaint, Plaintiff is a citizen of the United States of America and resident of the State of Colorado. John Mager resided at 2505 Cactus Drive, Colorado Springs, Colorado.

9. Defendant El Paso County is a county in Colorado and at all times relevant hereto did operate the El Paso County Sheriff's Office pursuant to policies and procedures as well as customs and practices.

10. At all times relevant, Joseph Royball was the duly elected Sheriff of El Paso County and in charge of implementing policies and procedures, as well as supervising and training Deputies of the El Paso County Sheriff's Office.

11. At all times relevant to this Complaint, Deputy Brett Falgoust was employed by the El Paso County Sheriff's Office and was acting under the color of state law.

12.     At all times relevant to the Complaint Deputy Susan Aragon was employed by the El Paso County Sheriff's Office and acting under the color of state law.

13.     At all times relevant to this Complaint, El Paso County and all of its agents and employees were acting within the scope of their official duties and employment, under color of state law.

## FACTS

14.     Approximately two weeks prior to the incident in question, Wendi Trehern had given her friend Carol Mager some lumber and garden items.  Ms. Trehern was in the process of moving and no longer believed she needed the items.

15.     Ms. Trehern's realtor informed her that before the house could be closed on, she needed to make some repairs to her deck.  Not wanting to purchase new wood, Ms. Trehern informed Carol Mager that she needed the property back.  Ms. Trehern took her son to the Mager residence and retrieved the lumber.

16.     Believing that Ms. Trehern wanted all of her property back, John Mager loaded the garden supplies and a couple of metal poles into his truck.  Mr. Mager proceeded to Ms. Trehern's residence and unloaded the property on the driveway.  Not liking the manner in which the property was left, Ms. Trehern called 911.

17.     El Paso County Deputies Brett Falgoust and Susan Aragon responded to the scene and spoke with Ms. Trehern.  After speaking with Ms. Trehern and a neighbor who witnessed the incident, Deputies Falgoust and Aragon discussed whether they that had any evidence of a criminal act.  They both agreed that at most, what had occurred was littering, a civil violation.

18.     The deputies then proceeded to Mr. Mager's residence.  Mr. Mager was enjoying his Sunday, watching football.  Deputy Falgoust called Mr. Mager and ordered him to come out of his house.  Deputy Falgoust began aggressively interrogating Mr. Mager regarding the way the property was dropped off.  Mr. Mager responded that he suffers from PTSD and severe anxiety.  Mr. Mager informed Deputy Falgoust that disagreement exacerbated his mental health problems and he just wanted it over as quickly as possible.

19.     Seeming irritated by this answer, Deputy Falgoust asked Mr. Mager if he had identification on him.  Mr. Mager, who was barefoot and in sweatpants, replied he did not have identification on him.  Deputy Falgoust then ordered Mr. Mager to turn around and began to handcuff Mr. Mager.

20.     Mr. Mager was understandably confused as to Deputy Falgoust's actions and kept asking why he was being handcuffed.  Deputy Falgoust stated he was being handcuffed because he refused to provide ID.  Mr. Mager correctly pointed out that Deputy Falgoust had asked if he "had ID on him" and explained that he had identification in his home, just not on his person because he had been watching a football game on television.  Despite just asking the question moments before, Deputy Falgoust denied he had asked if Mr. Mager had **ID on him**. Rather claimed he asked if he had identification period and that Mr. Mager had deliberately refused to comply with his demands.

21.     Despite being present and in ear shot for this conversation, Deputy Aragon at no point corrects Deputy Falgout.  Instead, she assists in handcuffing Mr. Mager.

22.     Deputy Falgoust then manhandled Mr. Mager and forced him to his cruiser.  Deputy Falgoust then attempted to shove Mr. Mager into the back of the cruiser.  Deputy Falgoust cranks Mr. Mager's arm behind his back trying to force him into the cruiser.  Mr.

Mager pleaded with him to stop, tried explaining to him that due to prior neck and back injures he physically could not get in the cruiser, and again stated he was disabled.

23.     Deputy Aragon eventually tells Deputy Falgoust just to place Mr. Mager into her SUV.

24.     Mr. Mager screams in agony and told Deputy Aragon that being handcuffed behind his back and forced to sit in the SUV was causing him severe physical and emotional discomfort.  Mr. Mager then requests for Deputy Aragon to to call medical if the handcuffs cannot be removed.  Despite knowing there was no legitimate reason to have Mr. Mager in cuffs or in her SUV, Deputy Aragon refuses to relieve his suffering.  She does, however, call medical.

25.     Mr. Mager's PTSD and anxiety were triggered by Deputy Falgoust and Aragon's illegal and unconstitutional actions and caused his blood pressure to skyrocket and eventually causes him to pass out.

26.     Deputy Falgoust tries to wake Mr. Mager by forcefully applying pressure to his head and neck.  This pressure caused extreme pain to Mr. Mager due to a prior injury from a car accident.

27.     Eventually paramedics arrived at the scene and began to treat Mr. Mager.  The illegal and unconstitutional actions of Deputies Falgoust and Aragon triggered Mr. Mager's PTSD and anxiety and caused his blood pressure to rise above 200. A blood pressure reading of 200 mmHg or higher is a hypertensive crisis, which is a medical emergency, requiring immediate medical attention.

28.     Medical then transported Mr. Mager to the hospital where he remained for three days.

29.     Before Mr. Mager was transported to the hospital, Deputy Falgoust wrote him a summons charging him with criminal mischief, littering and resisting arrest.

30.     On July 26, 2024, all charges were dismissed by the Fourth Judicial District Attorney's Office for lack of evidence.

31.     It has long been the custom and actual practice of the El Paso County Sheriff to engage in, encourage, and condone the improper and illegal arrests and the use of excessive force by EPSO Deputies.

32.     Before the incident in question Deputy Falgoust has been the subject of 24 chain of command/IA investigations.  Most of those complaints dealt with the treatment of community members.  In the three years preceding this incident, Deputy Falgoust had ten sustained complaints, six of which dealt with treatment of community members.  Most of the complaints describe Deputy Falgoust as "rude, unprofessional, belligerent, aggressive, and disrespectful."  It was acknowledged in 2023 that efforts to change his behavior had been unsuccessful, yet in January of 2024 he was still on patrol and almost caused Mr. Mager's death.

33.     El Paso County, and its law enforcement officers, have engaged in a persistent practice of law enforcement misconduct, and the officials responsible for assuring that such misconduct does not occur have consistently failed to properly train, supervise, and discipline officers who have engaged in such misconduct.

34.     With deliberate indifference to the rights of citizens to be free from unlawful entry, unlawful seizure, excessive force by police, Defendant El Paso County has encouraged, tolerated, ratified and acquiesced to a dangerous environment of police brutality by failing to respect the constitutional limitations on the use of force, by failing to adequately punish unconstitutional uses of force, by tolerating  the unconstitutional use of force; by tolerating its

officers' failure to adequately describe or fully report excessive force used by themselves or their colleagues; by failing to properly or neutrally investigate citizen complaints of excessive force; and by tolerating, encouraging and permitting collusive statements by involved officers in such situations.

## FIRST CLAIM FOR RELIEF

### (§1983 Fourth Amendment Violation - Excessive Force Defendants Falgout and Aragon)

35.     Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

36.     The actions of Defendants Falgout and Aragon as described herein, while acting under the color of state law, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his rights to freedom from unlawful seizures as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983, in that the Defendants had no probable cause or reasonable suspicion to believe that Plaintiff had committed any violation of the law prior to exerting the excessive force and causing serious permanent injuries.

37.     At the time of John Major's unlawful seizure, he had a clearly established constitutional right under the Fourth Amendment of the United States to be secure in his person from an unreasonable seizure through excessive force.

38.     Defendants Falgoust and Aragon's actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.  Both deputies acknowledged on Body Worn Camera they were investigating a civil matter at best.  Both deputies were aware of Mr. Mager's disability status and that he suffered from PTSD and

anxiety.  Deputy Falgoust handcuffed and manhandled Mr. Mager for absolutely no reason and
these actions caused injuries that nearly took Mr. Mager's life.  Deputy Aragon assisted in this
behavior and failed to intervene at any time.

39.    Defendant's actions, as described herein, were motivated by intent to harm the
Plaintiff.

40.    Defendants Falgoust and Aragon's actions, as described herein, were undertaken
intentionally, willfully, and wantonly.

41.    Any reasonable law enforcement officer would have known of this clearly
established right at the time the excessive force was used.

42.    The acts or omissions of the individual Defendants were the moving force behind,
and the proximate cause of the serious physical and emotional injuries suffer by the Plaintiff.

43.    The acts and omissions that Defendants Falgoust and Aragon engaged in were
pursuant to the formal or informal custom, policy and practice of the El Paso County Sheriff's
Office, which encourages, condones, tolerates, and ratifies the use of excessive force by its law
enforcement officers.

44.    Defendant El Paso County failed to properly hire, train, supervise and/or
discipline members of its police department regarding the proper use of force when dealing with
individuals.

45.    This inadequate hiring, training and/or supervision results from a conscious or
deliberate choice to follow a course of action from among various alternatives available to
Defendant El Paso County.

46.    Such failure to properly hire, train and supervise was the moving force behind and proximate cause of Defendants use of excessive force against Plaintiff, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

47.    Plaintiff has been and continues to be damaged by Defendants use of excessive force in the above incident.

48.    The acts or omissions of each Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiff's damages.

49.    As a direct result of Defendants' unlawful action as described herein, the Plaintiff suffered actual physical harm, emotional, and economic injuries in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violation – Wrongful Arrest Defendants Falgout and Aragon)

50.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

51.    Plaintiff had a constitutionally protected right to be secure in his person against unreasonable seizures and false arrest.

52.    Deputies Falgout and Aragon were at all times relevant hereto acting under the color of state law in their capacities as a El Paso County Sheriff's Deputies.

53.    Defendant Falgout unlawfully arrested Mr. Mager violating Mr. Mager's Fourth Amendment rights.  It was clear to Deputies Falgout and Aragon that at the time Mr. Mager was

arrested, they lacked probable cause for any crime. Further, a review of the body worn camera clearly shows that at no time did Mr. Mager resist arrest.

54.     At the time of the unlawful arrest of Mr. Mager, Plaintiff had a clearly established constitutional right under the Fourth Amendment of the United States to be secure in his person from unlawful arrest.

55.     Any reasonable law enforcement officer would have known of this clearly established right at the time of the unlawful arrest.

56.     The acts or omissions of the individual Defendants were the moving force behind and the proximate cause of the serious physical and emotional injuries suffered by the Plaintiff.

57.     The acts and omissions of Defendants Falgout and Aragon engaged in were pursuant to the formal or informal custom, policy and practice of the El Paso County Sheriff's Office, which encourages, condones, tolerates, and ratifies the use of unlawful arrests by its law enforcement officers.

58.     Defendant El Paso County failed to properly hire, train, supervise and/or discipline members of its police department regarding lawful and unlawful seizure.

59.     This inadequate hiring, training and/or supervision results from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Defendant El Paso County.

60.     Such failure to properly hire, train and supervise was the moving force behind and proximate cause of Defendants unlawful arrest against Plaintiff, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

61.     Plaintiff has been and continues to be damaged by Defendants the unlawful arrest.

62.     The acts or omissions of each Defendant, including the unconstitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Plaintiff's damages.

63.     As a direct result of Defendants' unlawful action as described herein, Plaintiff suffered actual physical harm, emotional, and economic injuries in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**(42 U.S.C. § 1983 – Constitutional Failure to Train and/or Supervise)**

(Against Defendants Joseph Royball and El Paso County Sheriff)

64.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

65.     Defendants Sheriff Royball and El Paso County developed and maintained law enforcement related policies, procedures, customs, and/or practices exhibiting or resulting in a deliberate indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in El Paso County, which proximately caused the violation of Plaintiff's constitutional rights.

66.     Defendants Royball and El Paso County maintained policies, procedures, customs, and/or practices that tacitly or explicitly authorized unlawful entries executed with excessive force, and failures to intervene, by Deputies of the Sheriff's Office, including but not limited to, the failure to train on at least the following: respecting the Fourth and Fourteenth Amendments rights of citizens to be free from unlawful arrests and excessive force.  Royball and the El Paso County Sheriff's Office failed to properly train its police officer to accommodate individuals with disabilities.

67.     The acts and omissions that Defendants Falgout and Aragon were engaged in were pursuant to the formal or informal custom, policy and practice of the El Paso County Sheriff's Office, which encourages, condones, tolerates, and ratifies the use of excessive force and unlawful arrests by its law enforcement officers.

68.     Defendants Royball and El Paso County are liable for their failure to train and to appropriately supervise deputies of the Sheriff's Office.

69.     The inadequate training and supervision provided by Defendants Royball and El Paso County resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available.

70.     If any training was given to Deputy Falgout concerning the rights of citizens to be free from excessive force and unlawful arrest, Defendants Royball and El Paso County knew that such training was reckless or grossly negligent and that misconduct in this area was almost inevitable.

71.     Defendants Royball and El Paso County have a duty to protect the constitutional rights of members of the public from violations of those rights by members of law enforcement.

72.     As a direct and proximate cause and consequence of Defendants Royball and El Paso County's failure to train and supervise, Plaintiff suffered injuries, damages, and loses as set forth above.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in their favor and against the Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)     Attorney fees and the costs associated with this action;

(f)     Pre and post-judgment interest at the lawful rate; and

(g)     Any further relief that this court deems just and proper, and any other relief as allowed by law.

**Plaintiff herein demand a trial by jury on all issues so triable.**

Dated this December 30, 2025

Respectfully submitted,

**BARKER & TOLINI, P.C.**

By:  s/ Joshua Tolini

Joshua N. Tolini
115 E. Costilla
Colorado Springs, CO 80903
719-227-0230
FAX: 719-227-0964